

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 23, 2024

**BY ECF AND EMAIL**
The Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Shanequa Washington*, 24 Cr. 334 (NRB)

Dear Judge Buchwald:

    Defendant Shanequa Washington ("Washington" or "the defendant") is scheduled to be sentenced on November 7, 2024, at 11:00 a.m., having pleaded guilty to Count One of Information 24 Cr. 334 (NRB) (the "Information"), which charged Washington with conspiring to commit honest services wire fraud, in violation of Title 18, United States Code, Section 371. The parties have stipulated to an applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 18 to 24 months' imprisonment (the "Stipulated Guidelines Range"). For the reasons discussed below, a sentence within the Stipulated Guidelines Range is warranted.

    I.    **Background**

        **A. Background on the New York City Department of Correction and Rikers Island**

    The jail facilities complex located on Rikers Island, in the Bronx, New York ("Rikers Island"), is operated by the New York City Department of Correction ("DOC"), a municipal agency that had a fiscal year 2021 budget that included $8,286,000 in federal funding. (PSR ¶ 18.)[1] To operate its jail facilities, the DOC employs DOC community coordinators, commonly known as program counselors, among other jail personnel. (PSR ¶ 17.) The primary duty of program counselors is to provide counseling, mentoring, and other support services to the inmate population

---

[1] Citations in the form of "PSR __" are to the Final Presentence Report docketed on August 23, 2024 (Dkt. 25).

of the DOC. In connection with this duty, program counselors are assigned to specific housing areas and meet with inmates in individual and group settings within those areas. (*Id.*)

According to the DOC Employee Rules and Regulations, employees of DOC facilities "shall not enter into any transaction with an inmate, nor carry, convey, or make accessible to an inmate within a facility/command any intoxicant, opiate, narcotic, or other contraband article, nor traffic with an inmate in any manner." The DOC Inmate Handbook defines "contraband" to mean "any item that is not sold in the commissary, that is not on the approved list of permissible items, that is possessed in more than the approved amount[,] or that the inmate does not have permission to possess," including "items that may disrupt the safety, security, good order and discipline of the facility." The DOC Inmate Handbook expressly prohibits inmates from possessing drugs, stating that inmates "shall not sell or exchange prescription drugs or non-prescription drugs." (PSR ¶ 16.)

DOC employees, including the defendant, receive training on employee rules and regulations, which, as described above, prohibit program counselors and other employees from, among other things, entering into transactions with inmates and providing inmates with contraband. (PSR ¶ 17.)

### B. The Defendant's Offense Conduct

From October 2017 through September 2022, Washington was employed as a DOC program counselor primarily assigned to the Robert N. Davoren Center ("RNDC") on Rikers Island. (PSR ¶ 13.) During some portion of the COVID-19 pandemic, Washington was also assigned to serve as a program coordinator for certain inmates at a second Rikers Island facility, the Anna M. Kross Center ("AMKC"). During that time, Washington was a program coordinator for, and ultimately formed a romantic relationship with, an AMKC inmate, referred to in the underlying Criminal Complaint, 24 Mag. 1379, (the "Complaint") and PSR as "Inmate-2." (PSR ¶¶ 13, 147.)[2] At some point prior to March 2022, Washington was reassigned to the RNDC and had no legitimate reason to visit other housing areas on Rikers Island, including AMKC. (PSR ¶ 38.) Nevertheless, from at least late March 2022 through early April 2022, the defendant abused her position as a DOC program counselor by conspiring with others, including Inmate-2, to smuggle contraband into the AMKC, including paper sheets soaked in controlled substances (the "contraband sheets"), on at least two occasions in exchange for at least $13,000 in bribes. (*See, e.g.*, PSR ¶¶ 2, 10, 13, 48, 55-56.)

Specifically, on March 26, 2022, the defendant smuggled approximately 11 contraband sheets—provided to her by codefendant and former DOC correctional officer Chantal De Los Santos ("De Los Santos")—into the AMKC and delivered them, inside a manila envelope, to Inmate-2, in exchange for at least $4,000 in bribes which were paid to a Cash App mobile payment account registered to and controlled by Washington (the "Washington Cash App Account"). (*See, e.g.*, PSR ¶¶ 28, 32-33, 35, 37, 47-48.) Inmate-2 then sold some of the contraband sheets to other

---

[2] On May 24, 2023, following her employment with DOC and her criminal conduct in this case, Washington married Inmate-2 at Green Haven Correctional Facility. Inmate-2 is serving a 19-year prison sentence for manslaughter. (PSR ¶ 147.)

Hon. Naomi Reice Buchwald                                                                                        Page 3
October 23, 2024

inmates, and provided the remaining contraband sheets to another unindicted co-conspirator, "Inmate-1," who was in a romantic relationship with De Los Santos. (PSR ¶¶ 49.)



*Images of Washington delivering contraband in an envelope to Inmate-2 on March 26, 2022*

On April 1, 2022, the defendant again smuggled contraband sheets into the AMKC and provided them to Inmate-2 (secreted in a folder), in exchange for at least $9,000 in bribes paid to the Washington Cash App Account. (PSR ¶¶ 50-52, 55-56.)



*Images of Washington bringing a folder containing contraband to Inmate-2 on April 1, 2022*

The Complaint and the PSR describe in greater detail the proof establishing Washington's guilt, which includes, among other things, incriminating recorded prison calls (including those placed between Inmate-2 and Washington), call detail records, license plate reader records, surveillance video footage, and financial records. (*See* PSR ¶¶ 25-61.) While the Washington Cash App Account received approximately $13,000 in bribe payments, it is conservatively estimated—and stipulated by the parties—that the "benefit received . . . in return for the payment" as that term is defined by U.S.S.G. § 2C1.1 and corresponding Application Note 3 (*i.e.*, the value of the contraband sheets smuggled into the AMKC by Washington) was between $15,000 and $40,000.

Hon. Naomi Reice Buchwald										Page 4
October 23, 2024

## I.    Procedural Posture

On May 23, 2024, the defendant pleaded guilty to Count One of the Information, pursuant to a plea agreement. (PSR ¶ 4.) As set forth in the plea agreement, the applicable Guidelines offense level is 15, the defendant's stipulated Criminal History category is I, and the Stipulated Guidelines Range is 18 to 24 months' imprisonment. (PSR ¶ 5.)

In a sentencing memorandum filed on October 20, 2024, the defendant asks the Court to impose a non-jail sentence, principally citing Washington's quick acceptance of responsibility, her remorse, and her support from friends and former colleagues, as documented in various letters appended to her sentencing memorandum. Washington also argues that her minor dependent child, who has special needs, would suffer collateral consequences if Washington serves any term of incarceration. (Dkt. 30.)

The United States Probation Office ("Probation") agrees with the parties' assessment of the applicable Guidelines offense level, criminal history, and Stipulated Guidelines Range (PSR ¶¶ 123-169.) Probation recommends a bottom-of-the-Guidelines sentence of 18 months' imprisonment. Probation notes that, notwithstanding such mitigating factors as Washington's lack of a prior criminal history, her strong familial support, and her obligations to her minor child, "the aggravating circumstances of the offense outweigh them." (PSR at 40.)

> As a trusted public official, by taking bribes to introduce contraband in a jail, the defendant not only jeopardized the security and safety of everyone at the correctional facility, but she betrayed her employer and the public at large who entrusted her with the position she held. Individuals like Washington who abuse their authority and the public's trust makes the government appear less efficient and less trustworthy from the perspective of the communities they serve.

(*Id*.)

## II.   Discussion

### A. Legal Framework

Following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Guidelines continue to provide a critical touchstone. Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range

itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)–(7).  *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. A Sentence Within the Stipulated Guidelines Range Is Warranted

The defendant abused the trust that the DOC placed in her by smuggling contraband to inmates on Rikers Island in exchange for at least $13,000 in bribe payments.  The nature and circumstances of the defendant's offense and the need for the sentence to achieve adequate deterrence, reflect the seriousness of the offense, protect the public, and promote respect for the law, warrant a sentence within the Stipulated Guidelines Range.  *See* 18 U.S.C. §§ 3553(a)(1), (a)(2).

*First*, a sentence of 18 to 24 months' imprisonment would promote respect for the law and is necessary to reflect the seriousness of the offense.  Contraband smuggling in New York City jails is a serious crime that adds an additional layer of dangerousness into an already precarious environment.  The smuggling and distribution of controlled substances, in particular, presents the risk of both drug overdoses and violent conflict over drug turf in the prison system.  And the defendant's repeated smuggling of contraband in exchange for monetary bribes significantly contributed to a larger, more widespread culture of corruption and contraband smuggling at Rikers Island.  The defendant's conduct, and the environment to which it contributed, made Rikers Island a more dangerous place for DOC inmates and officers alike.

The defendant's knowing breach of the trust placed in her by the DOC only increases the seriousness of her offense conduct.  The defendant, who received training on DOC rules and regulations governing DOC employees, clearly knew that what she was doing was wrong.  But she chose to ignore the rules, apparently out of a desire for personal gain and to benefit an inmate with whom she was having an illicit relationship.  Because the defendant understood that her conduct was wrong, she took steps to conceal it, including, for example, by hiding contraband in folders and envelopes, presumably to create the appearance that she was providing Inmate-2 with legitimate paperwork related to Washington's role as a program counselor.  Although the

defendant was tasked with helping inmates as an employee of the DOC, her criminal actions, in addition to being independently wrongful, had the opposite effect: those actions severely undermined the work of the DOC and endangered the DOC inmate population.

The defendant's conduct also harmed the public's confidence in its jail system and in the officials who administer it. As courts throughout this District have recognized, bribery offenses involving public services are extraordinarily serious, because they undermine the public's trust in such services and the officials who administer them. *See, e.g.*, *United States v. Figueroa*, No. 22 Cr. 605 (DLC), Dkt. 27 at 17 (S.D.N.Y. Feb. 9, 2023) (recognizing, in context of public housing manager's acceptance of bribes, that "corruption is a corrosive, destructive issue" and that "[p]eople need to have faith in their government"); *United States v. Costanzo*, No. 22 Cr. 281 (JPO), Dkt. 253 at 54 (S.D.N.Y. Apr. 24, 2024) (noting that bribery of public officials is "insidious [because] it undermines the public's faith in our system"); *United States v. Rupnarain*, No. 24 Cr. 125 (VEC), Dkt. 28 at 25 (S.D.N.Y. Aug. 5, 2024) (observing that public corruption is "one of the most serious of all federal offenses"). The DOC entrusted Washington to provide legitimate services in its jails, and she breached that public trust. In short, any sentence imposed should promote public confidence that DOC employees, such as the defendant, who are entrusted with providing services inside jails, do so with integrity and in accordance with the law.

*Second*, a sentence within the Stipulated Guidelines Range is necessary to achieve general deterrence and to protect the public. Specifically, such a sentence will send a strong message to others who work inside the jail system that this kind of conduct will not be tolerated. As this case demonstrates, the opportunities for bribing those who work inside jails are manifold, and detecting bribery inside jails is difficult. This makes it all the more important, when such criminal activity is detected, to send a strong deterrent message. A serious sentence is necessary to make clear that jail workers lured by the same temptations as the defendant will suffer serious consequences if they succumb to those impulses and accept bribes from inmates or smuggle contraband into prisons. To achieve general deterrence and respect for the law in a case of this nature, a significant sentence—one within the Stipulated Guidelines Range—is both appropriate and necessary.

*Finally*, a sentence within the Stipulated Guidelines Range is necessary to avoid unwarranted sentencing disparities. Washington's was one of several cases charged as part of a larger investigation into corruption on Rikers Island. *See, e.g.*, *United States v. Kenneth Webster*, 24 Cr. 345 (GBD); *United States v. Jason Skeet*, 23 Cr. 632 (JHR); *United States v. Kristopher Francisco*, 24 Cr. 388 (LGS); *United States v. Chantal De Los Santos*, 24 Cr. 508 (VEC); *United States v. Stephanie Davila*, 24 Cr. 467 (LGS); and *United States v. Carlos Rivera*, 24 Cr. 318 (JSR). Washington will be the fourth defendant sentenced of those cases, and the second (along with Skeet) who served as a DOC employee during the commission of the offense. To assist the Court in assessing the relative culpability of these individuals and calibrating an appropriate punishment for Washington, the Government provides the following chart:

| Defendant | Criminal History Category | Offense Level | Stipulated Guidelines Range (months) | Sentence Imposed (months) |
|---|---|---|---|---|
| Kenneth Webster | IV | 19 | 46 to 57 | 40 |
| Jason Skeet | I | 19 | 30 to 37 | 37 |
| Kristopher Francisco | IV | 15 | 30 to 37* | 37 |
| Shanequa Washington | I | 15 | 18 to 24 | |
| Chantal De Los Santos | I | 13 | 12 to 18 | |
| Stephanie Davila | I | 13 | 12 to 18 | |
| Carlos Rivera | I | 11 | 8 to 14 | |

\* Although the parties stipulated to a Guidelines range of 30 to 37 months' imprisonment and the Government stood by that agreement at sentencing, Probation and the Court determined that Francisco was actually in Criminal History Category V, yielding a Guidelines Range of 37 to 46 months' imprisonment.

The Government assesses Washington to be less culpable than Webster and Skeet, whose respective Stipulated Guidelines, accounting for their conduct and criminal histories, accurately reflect their culpability. While Webster's conduct was similar to Washington's—among other things, in his capacity as an employee of a DOC contractor, Webster also smuggled contraband that he received from De Los Santos into the AMKC in exchange for bribes—the value of the bribes Webster received was meaningfully higher than Washington and his criminal history was far more extensive than Washington's. Meanwhile, Skeet, a DOC correctional officer, on numerous occasions over a more sustained period of time, smuggled a significantly greater amount of contraband into Rikers Island than Washington in exchange for a significantly higher value in bribes. The Government instead views Washington in a similar category as De Los Santos and Davila. On the one hand, Washington is the only defendant among those three who personally smuggled contraband into Rikers Island and who was a DOC employee *at the time* of the charged conduct. De Los Santos and Davila, meanwhile, were each *former* DOC employees who provided DOC employees, including Washington, and others with the contraband that was ultimately smuggled into Rikers Island. The Government views Rivera, a correctional officer who smuggled contraband into the DOC in exchange for bribes, as the least culpable defendant, in part because he received only $2,000 in bribe payments in connection with his conduct. Accordingly, the Government respectfully submits that the respective sentencing ranges reflected in the above chart are largely commensurate with the defendants' relevant culpabilities, and that a sentence within the Stipulated Guidelines Range is necessary to avoid unwarranted disparities.

In short, the need to avoid unwarranted sentencing disparities, considered in combination with the serious nature and circumstances of the defendant's criminal conduct, the need to achieve general deterrence, and the need to promote respect for the law, warrant a sentence within the Stipulated Guidelines Range.

### III. Conclusion

For these reasons, the Government respectfully submits that a sentence within the Stipulated Guidelines Range of 18 to 24 months' imprisonment is warranted. In addition, the Government respectfully requests that during the sentencing proceeding, the Court orally order forfeiture in the amount of $13,000, as reflected in the previously docketed Consent Preliminary

Hon. Naomi Reice Buchwald  Page 8
October 23, 2024

Order of Forfeiture. (Dkt. 20.) Finally, the Government requests that the Court impose a period of three years' supervised release to follow any term of imprisonment, with the special conditions set forth in the PSR.[3] (*See* PSR at 42-43.)

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney for
                                        the Southern District of New York

By: _____
                                        Adam Z. Margulies
                                        Jonathan E. Rebold
                                        Derek Wikstrom
                                        Assistant United States Attorneys
                                        (212) 637-2345 / 2512 / 1085

cc:  Thomas Dunn, Esq. (via ECF)

---

[3] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).